**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| Information Images, LLC,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>PGA TOUR, Inc.,<br><br>　　　　Defendant. | Case No. 6:20-cv-268<br><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Information Images, LLC ("Information Images" or "Plaintiff") files this Original Complaint for Patent Infringement against Defendant PGA TOUR, Inc. ("PGA TOUR" or "Defendant").

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 *et seq*. This action involves U.S. Patent No. 9,806,832 (the "'832 Patent") and U.S. Patent No. 10,270,552 (the "'552 Patent"). *See* Ex. A (the '832 Patent), Ex. B (the '552 Patent).

## PARTIES

2.      Plaintiff Information Images is a Texas limited liability company with its principal place of business at 2229 San Felipe Street, Suite 1000, Houston, Texas 77019. Plaintiff Information Images is the owner by assignment of the '832 Patent and the '552 Patent. Information Images is owned and managed by the inventor of the '832 Patent and the '552 Patent, Arthur B. Long, III ("Arthur Long" or "Long").

3.      Defendant PGA TOUR is a Maryland corporation having its principal place of business at 112 PGA Tour Boulevard, Ponte Vedra Beach, Florida 32082.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §101, *et seq.*

5.      The Court has personal jurisdiction over Defendant PGA TOUR because Defendant PGA TOUR maintains a regular and established place of business in the State of Texas within this judicial district and has purposely availed itself of the privileges and benefits of the laws of the State of Texas.  Defendant PGA TOUR has continuous and systematic business contacts with the State of Texas.   Indeed, Defendant PGA TOUR, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, including by holding professional golf tournaments in the State of Texas and in this district, by owning and operating golf courses in the State of Texas and in this district, and by setting up ShotLink mobile offices in the State of Texas and in this district to manage ShotLink operations onsite for the duration of tournaments held by PGA TOUR. Ex. V; Ex. W.  Defendant PGA TOUR, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily used its infringing products and services in this district with the intention and expectation that they will be used by consumers in this district.  Defendant PGA TOUR has a physical place of business located in the district at TPC San Antonio, 23808 Resort Parkway, San Antonio, Texas 78261.  Ex. C.

6.      Defendant PGA TOUR maintains a regular and established place of business in this district because TPC San Antonio golf course is "regular and established."  TPC San Antonio opened in January 2010 and has hosted the PGA TOUR's Valero Texas Open since 2010.  The PGA TOUR's operation of such tournament in the Western District of Texas since at least 2010

also reflects "a regular and established place of business." Ex. Q, p. 1; *See also* the TPC San

Antonio address sign illustrated below[1]:



*See also* Valero Open golf course map illustrated below[2]:

---

[1] Available at: https://www.titleist.com/teamtitleist/m/ryancrysler_051310/11370.  Retrieved: March 3, 2020.

[2] Available at: https://forums.golfwrx.com/discussion/1760965/2019-valero-texas-open-monday-1.  Retrieved: March 3, 2020.



7.     Further, Defendant PGA TOUR regularly hosts recurring, established events held annually in this district for decades, including the Valero Texas Open in San Antonio, Texas and the World Golf Championships-Dell Technologies Match Play in Austin, Texas.  Ex. D; Ex. E;

Ex. N (stating "[t]he Valero Texas Open has been a proud San Antonio tradition for nearly 100 years"); Ex. O, pp. 3, 4, 6, 9 (listing PGA TOUR volunteer opportunities available in the State of Texas and within this judicial district); Ex. P (displaying a list of jobs with the PGA TOUR in Texas).

8.     In addition, TPC San Antonio is a place of Defendant PGA TOUR because TPC San Antonio is part of the TPC Network, which is owned, operated, and licensed by Defendant PGA TOUR, or is at least an alter ego of PGA TOUR.  Ex. C, p. 1.

9.     Venue is proper in this district under 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

10.     This case involves technology for the "gathering, processing, and distributing [of] information of a sporting event over a wireless network covering the sporting event."  Ex. A, '832 Patent, at Abstract.  In particular, the technology includes a "system capable of gathering player and game information from a sporting event such as a golf tournament, processing that information, and broadcasting the information over a network to handheld devices carried by spectators of the sporting event."  *Id.* at 1:12-19.

11.     Historically, "during certain events such as golf tournaments, it is difficult for spectators to get real-time information about the status [of] players who may be located a great distance away from where the spectator is watching, or may not be visible at all."  *Id.* at 1:25-29. Further, "due to tournament restrictions, spectators may be limited in the amount of access they have to the proximity of the players and surrounding golf course."  *Id.* at 1:30-32.  As such, prior to the Plaintiff's patents, spectators were "limited in the amount of real-time information they can get about a particular player and his status, and how each player is doing relative to others during the course of the tournament, or on particular holes."  *Id.* at 1:33-36.

12.     Plaintiff Information Images has U.S. patents directed to "systems and methods of gathering, processing, and broadcasting real-time information of the sporting event to portable devices carried by spectators of the sporting event" including the '832 Patent and the '552 Patent. *Id*. at 1:41-43; *see also* Ex. B, '552 Patent, 1:44-46.  Arthur Long is the named inventor of the '832 Patent and the '552 Patent.

13.     The '832 Patent and the '552 Patent generally describe and claim a system of gathering, processing, and distributing information of a golf tournament over a wireless network that includes a first portable device, a second portable device, and a production module.

14.     The '832 Patent generally describes and claims a method of gathering, processing, and distributing information of a golf tournament over a wireless network that includes providing a first portable device to be carried by a broadcast or other authorized spotter, inputting data by the spotter to the first portable device, transmitting input data over the wireless network to a second portable device, transmitting input data over the wireless network to a production module, and selectively displaying graphical representations of the transmitted data.

15.     The '552 Patent generally describes and claims a method of gathering, processing, and distributing information of a golf tournament over a wireless network that includes providing a first portable device to be carried by a spotter, inputting data by the spotter to the first portable device, distributing input data over the wireless network to a second portable device, distributing input data over the wireless network to a production module, and selectively displaying graphical representations of the transmitted data and endorsement information.

16.     The use of the systems and methods described and claimed in the '832 Patent and the '552 Patent enable viewers (e.g., patrons or users) of a golf tournament to access, via inquires on commercially available portable devices, real-time information of interest, such as location,

condition, and "lie" of a particular player's ball, the order of play of various players in the group, player's club selections, endorsement information, and other events regarding status of the game, course conditions, or any other game activity.

17.     Further, the systems and methods described in the '832 Patent and the '552 Patent "have the capacity to gather, process, and distribute information from spotters covering all players in the field simultaneously, making the present system as real-time as possible in distributing information to patrons regarding all players in the field, either on demand or otherwise (i.e., force-fed to the portable devices), depending on the nature of the information." Ex. A, 7:35-42.

18.     Arthur Long has been an avid golfer for more than 30 years.  Since August 2009, Long has enjoyed participating in PGA TOUR events as a volunteer spotter.  Through his spotting activities, Long identified a longstanding deficiency in the gathering and application of statistical analysis and data analytics at professional golf tournaments and an opportunity for technology to enhance the experience of patrons and viewers of golf tournaments.  Arthur Long developed a real-time, interactive information system for professional golf tournaments and filed U.S. Provisional Application No. 61/382,203 (the "'203 Application") on September 13, 2010, from which the '832 Patent and the '552 Patent claim priority.  Plaintiff Information Images is the owner through assignment of the '832 Patent and the '552 Patent.

19.     On or around May 2012, Long scheduled a meeting with executives of the PGA TOUR with the intent of entering into a business relationship that would enable his invention to be implemented to enhance the viewing experience of tournament patrons.  At the meeting, Long demonstrated his inventions and notified the PGA TOUR of the patent pending status of the '832 Patent.

20.     Further, during the meeting, Arthur Long demonstrated new features, as described in the '832 Patent including a first portable device with a map of the golf course and a second portable device displaying endorsements.  Long's impression during the meeting was that the PGA TOUR executives present were interested in his invention.  The executives asked Long a number of questions and carefully studied the written materials that Long brought to the meeting.  At the conclusion of the meeting, the PGA TOUR executives thanked Long for his presentation and said that they would contact him to discuss next steps.  The parties continued to communicate by telephone and email.

21.     After the '832 Patent issued, Arthur Long requested a meeting with Defendant PGA TOUR and was granted a meeting on July 25, 2018, at 11:00 AM (local time).  At the meeting, Long informed Defendant PGA TOUR that he had been awarded the '832 Patent and that he had filed an additional patent application that might be of interest to the PGA TOUR.  Defendant PGA Tour's Steve Evans asked about potential litigation and requested that Long submit a business proposal concerning the '832 Patent.

22.     In response to PGA TOUR's request for a business proposal and to clarify his position, Long sent Defendant PGA TOUR a notice letter, dated January 9, 2019, ("Notice Letter"), identifying the '832 Patent and referencing the continuation patent application of the '832 Patent, that later issued as the '552 Patent.  This Notice Letter was at least received by Defendant PGA TOUR on or about February 27, 2019.

23.     In response to the Notice Letter, Defendant, via email on March 7, 2019, stated that the Notice Letter contained threats and that same letter was being reviewed by its legal counsel.

24.     On March 8, 2019, via email, Arthur Long informed Defendant PGA TOUR that "no 'threats' were intended and … no 'threats' were made."  Additionally, Long expressed his wishes "for a business solution."

25.     On or about April 2, 2019, Long was surprised to receive an email from Steve Evans, one of the PGA TOUR executives who had met with Long, that stated: "At this time, the PGA TOUR is not interested in further pursuing a commercial relationship for your services…. PGA TOUR hereby expressly reserves any and all rights to freely use, without compensation to you, any information, ideas, inventions or other materials that you choose to provide to the PGA TOUR."

26.     Following the email, Long heard nothing else from the PGA TOUR regarding his inventions, and the PGA TOUR did not pursue any business with Long.

27.     Although the PGA TOUR never sought to license the '832 Patent or otherwise compensate Long for the use of his inventions, Long has learned that the PGA TOUR has implemented the system and method claimed in the '832 Patent and in the subsequent '552 Patent without notice, authorization, or compensation to Information Images.

28.     On information and belief, the PGA TOUR has begun making, using, importing, selling and/or offering for sale products in this district and elsewhere in the United States that infringe the '832 Patent and the '552 Patent literally, directly or indirectly, or under the doctrine of equivalents.  On information and belief, the infringing products are the ShotLink system including at least ShotLink Plus, PGA TOUR Mobile application, and ShotLink® software as a system, service, and related hardware (collectively, "ShotLink") as specifically discussed herein. While earlier versions of the PGA TOUR's ShotLink system existed prior to the '832 and '552 patents, on information and belief, the prior versions of ShotLink did not include the features and

enhancements disclosed and claimed in the '832 and '552 patents until after Long's meeting with the PGA TOUR discussed above.

29.     According to PGA TOUR literature, the ShotLink system now operates on approximately 93 events each year and provides data to a variety of sources, including the media, on-site and international television broadcast partners, PGATOUR.COM, studio golf shows such as Golf Central and Inside the PGA TOUR, players, coaches, caddies, mobile devices, on-site partners who provide fan enhancements at tournaments such as video boards and kiosks, golf course architects, and others. Ex. K. Indeed, the PGA TOUR currently touts the ShotLink System as "a revolutionary platform" intended to "[t]urn data into information, information into knowledge, and knowledge into entertainment." Ex. F. The enhanced ShotLink provides additional opportunities for PGA TOUR to significantly grow its revenue through increased engagement with the public and others. In fact, on or about November 2018, PGA TOUR announced plans to monetize the real-time data made possible by the latest version of ShotLink through a partnership with IMG Arena, which will distribute the data to sports media companies, news services, and regulated sports betting and gaming markets. Ex. S.

30.     The PGA TOUR has committed acts of infringement of the '832 Patent and the '552 Patent via use of ShotLink throughout the State of Texas and elsewhere at PGA TOUR events including the Valero Texas Open in San Antonio, Texas, the World Golf Championships-Dell Technologies Match Play in Austin, Texas, AT&T Byron Nelson in Dallas, Texas, the Charles Schwab Challenge in Fort Worth, Texas, and the Houston Open in Humble, Texas. Ex. D; Ex. E (describing ShotLink operations at the Valero Texas Open which includes "provid[ing] real-time data and scoring of every shot made by the pros which will be prominently featured on

PGATOUR.com, the PGA TOUR App and on the national and international television broadcasts.").

31.     On information and belief, Defendant PGA TOUR's infringement has been willful since at least receipt of the Notice Letter.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 9,806,832)

32.     Plaintiff incorporates herein all paragraphs above by reference.

33.     On October 31, 2017, the United States Patent and Trademark Office issued the '832 Patent, titled "Sports Information Gathering and Broadcasting System." Plaintiff Information Images is the owner through assignment of the '832 Patent.

34.     The '832 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

35.     On information and belief, PGA TOUR has committed acts of direct infringement of the '832 Patent under 35 U.S.C. § 271(a) at least by making, using, selling, offering to sell, and/or importing into the United States ShotLink, as described herein.

36.     In addition to directly infringing the '832 Patent through making, using, selling, offering to sell, and/or importing into the United States ShotLink, the use of ShotLink by others, as intended by PGA TOUR and in accordance with instructions provided by the PGA TOUR, directly infringes the '832 Patent. Specifically, the PGA TOUR provides ShotLink to users in the United States with the expectation and intent that such users will use ShotLink, thereby directly infringing the '832 Patent. PGA TOUR has had knowledge of the '832 Patent, and the infringement of the '832 Patent, since at least the receipt of the Notice Letter. As such, PGA TOUR has induced infringement of the '832 Patent under 35 U.S.C. § 271(b).

37.     PGA TOUR has been aware since its meeting with Long in 2012 and since the receipt of the Notice Letter, that ShotLink has infringing features that were especially made or especially adapted for use in an infringement of the '832 Patent, are not a staple article or commodity of commerce, and have no substantial use that does not infringe the '832 Patent. Because ShotLink itself infringes the '832 Patent, any use or sale thereof infringes the '832 Patent. As such, PGA TOUR's making, using, and offering of ShotLink constitutes contributory infringement of the '832 Patent under 35 U.S.C. § 271(c).

38.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 and Claim 5 of the '832 Patent by ShotLink, a system and method of gathering, processing, and distributing information of a golf tournament over a wireless network as described in the '832 Patent. Specifically, ShotLink comprises a first portable device, a second portable device, and a production module as described in the '832 Patent.  Further, ShotLink comprises providing a first portable device carried by a spotter, inputting data by the spotter, transmitting input data over the wireless network to a second portable device, transmitting input data over the wireless network to a production module, and selectively displaying graphical representations of the transmitted data.

39.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 and Claim 5 of the '832 Patent by ShotLink, which includes a system and a method of gathering, processing, and distributing information of a golf tournament over a wireless network as described in Ex. F, p.1 (describing ShotLink as "revolutionary platform for collecting and disseminating scoring and statistical data on every shot by every player in a tournament, in real time….[t]his state-of-the-art technology helps to significantly improve real-time accuracy and data speed."); Ex. G, p. 1 (stating

"[t]he PGA TOUR has completed the implementation of a WiFi data collection system that utilizes the 802.11a frequency band.").

40.    PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '832 Patent by ShotLink, which includes a first portable device configured to be carried by a broadcast or other authorized spotter of the golf tournament, the spotter having special permitted access to a golf course of the golf tournament and to participants of the golf tournament, the first portable device including a map of the golf course, the first portable device being configured to receive input data from the spotter regarding status of a selected player's golf ball during the golf tournament in real time after the golf ball has been hit by the selected player on a current hole of the selected player, the first portable device being configured to present information regarding the location and distance of the selected player's ball relative to the map of the golf course in real time after the ball has been hit by the selected player, the input data including information pertaining to the lie and the condition of the golf ball being tracked by the spotter and the selected player's strokes as they occur, the first portable device being configured to transmit the input data over the wireless network in real time during the golf tournament as described and shown in at least Ex. F (stating "tablet operators are positioned next to the green and plot shots on a Surface tablet when the ball comes to rest. This state-of-the-art technology helps to significantly improve real-time accuracy and data speed"); Ex. E (stating that volunteers will "input stroke, scoring and statistical information"); Ex. G; Ex. I, pp.1-2 at (stating that ShotLink is "a state-of-the-art system for collecting and distributing real-time scoring and statistical data" and that the role of a tablet operator includes "using a handheld tablet device to plot the landing position of shots on and around the green" and "[t]ablet operators are expected to walk around the green as necessary to

gain accurate insight into the location of each shot without interrupting play… [and] should be comfortable using a tablet device to enter the ball's location"); Ex. J (stating "volunteers will be inside the ropes using a tablet that has a map of the green"); Ex. K (stating "[e]ach golf course is mapped prior to the event so a digital image of each hole is used as background information in order to calculate exact locations and distances between any two coordinates (e.g., tee box and the player's first shot or the shot location and location of the hole)."); Ex. R, pp. 1-2 (describing a ShotLink volunteer's experience including receiving "a small tablet into which I would input data" such as "tapping in information about the player's location, lie and stance"); Ex. T (stating "[t]he job of a walking scorer is to walk with a group and keep their score and specific statistics….[A walking scorer] will be issued equipment which includes a handheld device."); Ex. U (illustrating a walking scorer entering information on a handheld device).



Ex. H, pp. 1-2 (illustrating the first portable device with a map of the golf course).

41.    PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '832

Patent by ShotLink, which includes a second portable device carried by a patron of the golf tournament to receive transmitted input data over the wireless network, and to selectively display current statistics pertaining to the selected hole and graphical representations of the transmitted input data according to an input from the patron as described and shown in at least Ex. G; Ex. K, p. 1 (stating ShotLink provides data to "[m]obile devices"); Ex. L, pp. 8, 11 (illustrating the second portable device with graphical representation of transmitted input data); Ex. M, p. 1 (describing displayed features of ShotLink on the second portable device including live player scorecards and course details and illustrating graphical representations).

42.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '832 Patent by ShotLink, which includes the second portable device comprising a memory with pre-programmed information stored therein, the pre-programmed information including endorsements of respective participants of the golf tournament by manufacturers of equipment used by the respective participants of the golf tournament as described and shown in Ex. M, p. 1 (illustrating the endorsements).

43.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '832 Patent by ShotLink, which includes a production module configured to receive transmitted input data over the wireless network simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display transmitted input data such that the production module selectively distributes a portion of the transmitted input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network,

the processing module configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to distribute requested data to each second portable device over the wireless network based on received data requests from each second portable device, respectively as described and shown in Ex. G; Ex. K, pp. 1-2 (stating "approximately 350 volunteers per event to score the golf tournament" and that ShotLink provides data to various sources including on-site and international broadcast partners, PGATOUR.com, studio shows, players, coaches, caddies, print media, mobile devices, on-site partners for fan enhancement, etc.); Ex. L, p. 8 (illustrating transmission of input data via Internet and telecast). *See also* at least as shown as follows[3]:



How ShotLink works on the PGA TOUR

Since the official ShotLink era began on the PGA TOUR in 2002, this tool has provided the ability to record instrumental stats in order to enhance the overall fan and player experience.

44.    PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 5 of the '832 Patent by ShotLink, which includes providing a first portable device to be carried by a broadcast

---

[3] *See* https://www.pgatour.com/video/2017/04/04/how-shotlink-works-on-the-pga-tour.html (last visited February 18, 2020).

or other authorized spotter of the golf tournament, the first portable device including a map of the

golf course, the spotter having special permitted access to a golf course of the golf tournament and

to participants of the golf tournament as described and shown in Ex. F, p. 1 (stating "tablet

operators are positioned next to the green and plot shots on a Surface tablet when the ball comes

to rest. This state-of-the-art technology helps to significantly improve real-time accuracy and data

speed" and describing ShotLink as "a revolutionary platform for collecting and disseminating

scoring and statistical data on every shot by every player in a tournament, in real time."); Ex. H,

pp. 1-2 (illustrating tablets used by volunteers to input data); Ex. I (stating that ShotLink is "a

state-of-the-art system for collecting and distributing real-time scoring and statistical data" and

that the role of a tablet operator includes "using a handheld tablet device to plot the landing position

of shots on and around the green" and "[t]ablet operators are expected to walk around the green as

necessary to gain accurate insight into the location of each shot without interrupting play…. [and]

should be comfortable using a tablet device to enter the ball's location"); Ex. R, pp. 1-2 (describing

a ShotLink volunteer's experience including receiving "a small tablet into which I would input

data" such as "tapping in information about the player's location, lie and stance").

45.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly,

or under the doctrine of equivalents, one or more claims, including at least Claim 5 of the '832

Patent by ShotLink, which includes inputting data by the spotter to the first portable device

regarding status of a player's golf ball during the golf tournament in real time after the golf ball

has been hit by the player on a current hole of the player, the first portable device being configured

to present information regarding the location and distance of the player's ball relative to the map

of the golf course in real time after the ball has been hit by the player, the input data including

information pertaining to the lie and the condition of the golf ball being tracked by the spotter and

the player's strokes as they occur as described and shown in Ex. F; Ex. E; Ex. G; Ex. H, p. 2 (illustrating input of data to the first portable device); Ex. I (stating "using a handheld tablet device to plot the landing position of shots on and around the green"); Ex. R; Ex. T; Ex. U.

46.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 5 of the '832 Patent by ShotLink, which includes transmitting input data over the wireless network to a second portable device carried by a patron of the golf tournament in real time during the golf tournament, the second portable device comprising a memory with pre-programmed information stored therein, the pre-programmed information including endorsements of respective participants of the golf tournament by manufacturers of equipment used by the respective participants of the golf tournament as described and shown in Ex. F; Ex. E; Ex. G; Ex. I; Ex. L, pp. 8, 11; Ex. M.

47.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 5 of the '832 Patent by ShotLink, which includes transmitting input data over the wireless network to a production module simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display transmitted input data such that the production module selectively distributes a portion of the transmitted input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network, the processing module configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to distribute requested data to each second portable device over the wireless network based on received data requests from each second portable device, respectively as described and shown in Ex. F; Ex. G; Ex. I; Ex. L, pp. 8, 11; Ex. M.

19

48.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 5 of the '832 Patent by ShotLink, which includes selectively displaying graphical representations of the transmitted data on the second portable device according to inquiries of the patron as described and shown in Ex. I; Ex. L, pp. 8, 11; Ex. M.

49.     On information and belief, Defendant PGA TOUR's infringement has been willful since at least receipt of the Notice Letter.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 10,270,552)

50.     Plaintiff incorporates herein all paragraphs above by reference.

51.     On April 23, 2019, the United States Patent and Trademark Office issued the '552 Patent.  The '552 Patent is a continuation of the '832 Patent.  Plaintiff Information Images is the owner through assignment of the '552 Patent.

52.     The '552 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

53.     On information and belief, PGA TOUR has committed acts of direct infringement of the '552 Patent under 35 U.S.C. § 271(a) at least by making, using, selling, offering to sell, and/or importing into the United States ShotLink, as described herein.

54.     In addition to directly infringing the '552 Patent through making, using, selling, offering to sell, and/or importing into the United States ShotLink, the use of ShotLink by others, as intended by PGA TOUR and in accordance with instructions provided by the PGA TOUR, directly infringes the '552 Patent.  Specifically, the PGA TOUR provides ShotLink to users in the United States with the expectation and intent that such users will use ShotLink, thereby directly infringing '552 Patent.  PGA TOUR has had knowledge of the '552 Patent, and the infringement

20

of the '552 Patent, since at least the receipt of the Notice Letter.  As such, PGA TOUR has induced

infringement of the '552 Patent under 35 U.S.C. § 271(b).

54.     PGA TOUR has been aware, since its meeting with Long in 2012, and since receipt

of the Notice Letter, that ShotLink has infringing features that were especially made or especially

adapted for use in an infringement of the '552 Patent, are not a staple article or commodity of

commerce, and have no substantial use that does not infringe the '552 Patent.  Because ShotLink

itself infringes the '552 Patent, any use or sale thereof infringes the '552 Patent.  As such, PGA

TOUR's making, using, and offering ShotLink constitutes contributory infringement of the '552

Patent under 35 U.S.C. § 271(c).

56.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly,

or under the doctrine of equivalents, one or more claims, including at least Claim 1 and Claim 13

of the '552 Patent by ShotLink, a system and method for gathering, processing, and distributing

information of a golf tournament over a wireless network as described in the '552 Patent.

Specifically, ShotLink includes a first portable device, a second portable device, and a production

module.  Further, ShotLink comprises providing a first portable device, inputting data by the

spotter, distributing input data over the wireless network to a second portable device, distributing

input data over the wireless network to a production module, and selectively displaying graphical

representations of the transmitted data.

57.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly,

or under the doctrine of equivalents, one or more claims, including at least Claim 1 and Claim 13

of the '552 Patent by ShotLink, which includes a system and a method of gathering, processing,

and distributing information of a golf tournament over a wireless network as described in Ex. F,

p.1 (describing ShotLink as "revolutionary platform for collecting and disseminating scoring and

statistical data on every shot by every player in a tournament, in real time….[t]his state-of-the-art technology helps to significantly improve real-time accuracy and data speed."); Ex. G, p. 1 (stating "[t]he PGA TOUR has completed the implementation of a WiFi data collection system that utilizes the 802.11a frequency band.").

58.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '552 Patent by ShotLink, which includes a first portable device configured to be carried by a spotter of the golf tournament, the spotter having special permitted access to a golf course of the golf tournament and to participants of the golf tournament, the first portable device including a map of the golf course, the first portable device being configured to receive input data from the spotter regarding status of a selected player's golf ball during the golf tournament in real time after the golf ball has been hit by the selected player on a current hole of the selected player, the first portable device being configured to present information regarding the location and distance of the selected player's ball relative to the map of the golf course in real time after the ball has been hit by the selected player, the input data including information pertaining to the lie and the condition of the golf ball being tracked by the spotter and the selected player's strokes as they occur, the first portable device being configured to distribute the input data over the wireless network in real time during the golf tournament as described and shown in at least Ex. F (stating "tablet operators are positioned next to the green and plot shots on a Surface tablet when the ball comes to rest.  This state-of-the-art technology helps to significantly improve real-time accuracy and data speed"); Ex. E (stating that volunteers will "input stroke, scoring and statistical information"); Ex. G; Ex. I, pp.1-2 at (stating that ShotLink is "a state-of-the-art system for collecting and distributing real-time scoring and statistical data" and that the role of a tablet operator includes "using a handheld

tablet device to plot the landing position of shots on and around the green" and "[t]ablet operators are expected to walk around the green as necessary to gain accurate insight into the location of each shot without interrupting play….[and] should be comfortable using a tablet device to enter the ball's location"); Ex. J (stating "volunteers will be inside the ropes using a tablet that has a map of the green."); Ex. K (stating "[e]ach golf course is mapped prior to the event so a digital image of each hole is used as background information in order to calculate exact locations and distances between any two coordinates (e.g., tee box and the player's first shot or the shot location and location of the hole)."); Ex. R, pp. 1-2 (describing a ShotLink volunteer's experience including receiving "a small tablet into which I would input data" such as "tapping in information about the player's location, lie and stance"); Ex. T (stating "[t]he job of a walking scorer is to walk with a group and keep their score and specific statistics….[A walking scorer] will be issued equipment which includes a handheld device."); Ex. U (illustrating a walking scorer entering information on a handheld device).



How ShotLink Plus is revolutionizing how we see golf | Orchestrating the PGA TOUR





How ShotLink Plus is revolutionizing how we see golf | Orchestrating the PGA TOUR

Skratch

13,036 views

Ex. H, pp. 1-2 (illustrating the first portable device with a map of the golf course).

59.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '552 Patent by ShotLink, which includes a second portable device carried by a user viewing the golf tournament to receive distributed input data over the wireless network, and to selectively display current statistics pertaining to the selected hole and graphical representations of the distributed input data according to an input from the user, as described and shown in at least Ex. G; Ex. K, p. 1 (stating ShotLink provides data to "[m]obile devices"); Ex. L, pp. 8, 11 (illustrating the second portable device with graphical representation of transmitted input data); Ex. M, p. 1 (describing displayed features of ShotLink on the second portable device including live player scorecards and course details and illustrating graphical representations).

60.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '552

Patent by ShotLink, which includes the second portable device being configured to display pre-programmed information provided to the second portable device including endorsement information of manufacturers of equipment used by the respective participants of the golf tournament as described and shown in Ex. M, p. 1 (illustrating the endorsements).

61.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 1 of the '552 Patent by ShotLink, which includes a production module configured to receive distributed input data over the wireless network simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display distributed input data so as to selectively distribute at least a portion of the distributed input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network, the processing module being configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to distribute requested data to each second portable device over the wireless network based on received data requests from each second portable device, respectively as described and shown in Ex. G; Ex. K, pp. 1-2 (stating "approximately 350 volunteers per event to score the golf tournament" and that ShotLink provides data to various sources including on-site and international broadcast partners, PGATOUR.com, studio shows, players, coaches, caddies, print media, mobile devices, on-site partners for fan enhancement, etc.); Ex. L, p. 8 (illustrating transmission of input data via Internet and telecast). *See also* at least as shown as follows[4]:

---

[4] *See* https://www.pgatour.com/video/2017/04/04/how-shotlink-works-on-the-pga-tour.html (last visited February 18, 2020).



How ShotLink works on the PGA TOUR

Since the official ShotLink era began on the PGA TOUR in 2002, this tool has provided the ability to record instrumental stats in order to enhance the overall fan and player experience.

62.    PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 13 of the '552 Patent by ShotLink, which includes providing a first portable device to be carried by a spotter of the golf tournament, the first portable device including a map of the golf course, the spotter having special permitted access to a golf course of the golf tournament and to participants of the golf tournament as described and shown in Ex. F, p. 1 (stating "tablet operators are positioned next to the green and plot shots on a Surface tablet when the ball comes to rest. This state-of-the-art technology helps to significantly improve real-time accuracy and data speed" and describing ShotLink as "a revolutionary platform for collecting and disseminating scoring and statistical data on every shot by every player in a tournament, in real time."); Ex. H, pp. 1-2 (illustrating tablets used by volunteers to input data); Ex. I (stating that ShotLink is "a state-of-the-art system for collecting and distributing real-time scoring and statistical data" and that the role of a tablet operator includes "using a handheld tablet device to plot the landing position of shots on and around the green" and "[t]ablet operators are expected to walk around the green as necessary to gain accurate insight into the location of each shot without interrupting play…. [and] should be

26

comfortable using a tablet device to enter the ball's location"); Ex. R, pp. 1-2 (describing a ShotLink volunteer's experience including receiving "a small tablet into which I would input data" such as "tapping in information about the player's location, lie and stance").

63.      PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 13 of the '552 Patent by ShotLink, which includes inputting data by the spotter to the first portable device regarding status of a player's golf ball during the golf tournament in real time after the golf ball has been hit by the player on a current hole of the player, the first portable device being configured to present information regarding the location and distance of the player's ball relative to the map of the golf course in real time after the ball has been hit by the player, the input data including information pertaining to the lie and the condition of the golf ball being tracked by the spotter and the player's strokes as they occur as described and shown in Ex. F; Ex. E; Ex. G; Ex. H, p. 2 (illustrating input of data to the first portable device); Ex. I (stating "using a handheld tablet device to plot the landing position of shots on and around the green"); Ex. R; Ex. T; Ex. U.

64.      PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 13 of the '552 Patent by ShotLink, which includes distributing input data over the wireless network to a second portable device carried by a user in real time during the golf tournament, the second portable device being configured to display endorsement information provided to the second portable device including endorsements of respective participants of the golf tournament by manufacturers of equipment used by the respective participants of the golf tournament as described and shown in Ex. F; Ex. E; Ex. G; Ex. I; Ex. L, pp. 8, 11; Ex. M.

27

65.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 13 of the '552 Patent by ShotLink, which includes distributing input data over the wireless network to a production module simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display distributed input data so as to selectively distribute a portion of the transmitted input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network, the processing module configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to distribute requested data to each second portable device over the wireless network based on received data requests from each second portable device, respectively as described and shown in Ex. F; Ex. G; Ex. I; Ex. L, pp. 8, 11; Ex. M.

66.     PGA TOUR has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least Claim 13 of the '552 Patent by ShotLink, which includes selectively displaying graphical representations of the transmitted data and endorsement information on the second portable device according to inquiries of the user as described and shown in Ex. I; Ex. L, pp. 8, 11; Ex. M.

67.     On information and belief, Defendant PGA TOUR's infringement has been willful since at least receipt of the Notice Letter.

68.     The facts and circumstances surrounding the subject of this lawsuit, on information and belief, make this an "exceptional case" under 25 U.S.C. § 285 and as such, Plaintiff is entitled to recover attorneys' fees under 25 U.S.C. § 285.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Information Images, LLC respectfully requests the following relief:

A.      Enter judgment that PGA TOUR, Inc., has infringed the '832 Patent and the '552 Patent and that such infringement was willful;

B.      Enter an Order enjoining PGA TOUR, Inc., its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with PGA TOUR, Inc., who receive notice of the order from further infringement of the '832 Patent and the '552 Patent;

C.      Award Information Images, LLC damages in an amount sufficient to compensate it for PGA TOUR's infringement of the '832 Patent and the '552 Patent, including enhanced damages, together with pre-judgment and post-judgment interest and costs in accordance with 35 U.S.C. § 284;

D.      Award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damages for any such acts of infringement;

E.      Declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses and costs incurred in this action; and

F.      Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated:  April 6, 2020                                Respectfully submitted,


                                                     By: /s/ John H. Barr, Jr.

                                                     John H. Barr, Jr.
                                                     Attorney In Charge
                                                     Texas Bar No. 00783605
                                                     jbarr@pattersonsheridan.com

                                                     John A. Yates
                                                     Texas Bar No. 24056569
                                                     jyates@pattersonsheridan.com

                                                     B. Todd Patterson
                                                     Texas Bar No. 00789537
                                                     tpatterson@pattersonsheridan.com

                                                     **Patterson + Sheridan LLP**
                                                     24 Greenway Plaza, Suite 1600
                                                     Houston, Texas 77046
                                                     (Tel): 713-623-4844
                                                     (Fax): 713-623-4846

                                                     Abelino Reyna
                                                     Texas Bar No. 24000087
                                                     areyna@pattersonsheridan.com

                                                     **Patterson + Sheridan LLP**
                                                     900 Washington Ave., Suite 503
                                                     Waco, Texas 76701
                                                     (Tel.): 254-777-5248
                                                     (Fax): 877-777-8071

                                                     *Attorneys for Plaintiff,*
                                                     *Information Images, LLC*