UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

Case No. 6:20-cv-268

INFORMATION IMAGES, LLC

    Plaintiff

v.

PGA TOUR, INC.

    Defendant.

_____/

**Defendant PGA TOUR's Motion
To Declare This Case Exceptional
And Award Attorneys' Fees Pursuant To 35 U.S.C. § 285**

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 285 and Fed. R. Civ. P. 54(d), Defendant respectfully requests the Court to find this case exceptional and award Defendant its reasonable attorney fees and expenses.

First, all the asserted patent claims require acts not just by PGA TOUR, but also by a third party. Specifically, as asserted by Plaintiff against PGA TOUR, the claims require input by a spotter associated with PGA TOUR on a first portable device, and input by a third party patron/user on a second portable device. This plainly raised a divided infringement issue.

Plaintiff was well aware of this hole in its case. Indeed, plaintiff's infringement expert report references the law on divided infringement. However, the expert report provided no analysis explaining why the steps performed by the third party patrons should be attributable to PGA TOUR. Moreover, as explained below, rather than withdrawing its doomed infringement claims, Plaintiff chose to continue litigating despite not having any reasonable basis for believing that PGA TOUR could be found to be responsible for the patron's use of the second portable device.

1

Plaintiff even opposed summary judgment in connection with divided infringement by making arguments that had no support in the evidence cited by Plaintiff.

Second, all the asserted patent claims require the input of the "condition of the ball." In construing this phrase at the *Markman* hearing, the Court rejected Plaintiff's proposed construction of "location or physical state," and construed it to mean "physical state of the ball." The Court also construed "lie" to mean "the physical environment immediately adjacent to the golf ball in its current position." This was fatal to Plaintiff's claims, because PGA TOUR's accused system has never included input of the condition/physical state of the ball. Once again, Plaintiff chose to continue to pursue its infringement claims anyway, even after its infringement expert could find no evidence that PGA TOUR's accused system included input of the physical state of the ball. Instead, Plaintiff and its infringement expert argued that data regarding the location of the ball and of the lie of the ball satisfied the "condition of the ball" limitation, contrary to the Court's constructions and contrary to the teaching in the specification that location, lie, and condition of the ball are separate things.

Finally, Plaintiff also unjustifiably pursued damages from revenues received by PGA TOUR for performing services under a contract for which there was no evidence whatsoever of any use of a second portable device. Because use of the second portable device is a required element of all of the asserted claims, Plaintiff had no ability to establish infringement in connection with the services provided under the contract. The reason why Plaintiff pursued those alleged damages without a legally supportable basis for doing so is obvious. Including the royalty that Plaintiff claimed it was entitled to on those contract revenues *quadrupled* its total damages claim. Pursuing royalties on revenues from actions that could not possibly be found to infringe to hugely

2

72293419;7

inflate the amount of damages being requested is precisely the type of unreasonable litigation behavior that 35 U.S.C. § 285 is designed to prevent.

Each of the above three reasons is sufficient on its own to support a finding that this is an exceptional case and that PGA TOUR should be awarded its reasonable attorney's fees for having to defend against Plaintiff's infringement claims for 2.5 years. That all three reasons exist in the same case make such findings all the more compelling.

PGA TOUR has also filed a Bill of Costs for its taxable costs and respectfully requests that those costs be granted to it as the prevailing party, apart from the award of attorneys' fees being pursued in this motion.

## II. CASE HISTORY AND LEGAL STANDARD

### A. Background

This case was brought by Plaintiff Information Images, LLC against PGA TOUR, Inc. Information Images asserted claims for infringement of United States Patent No. 9,806,832 (Count I) and Infringement of United States Patent No. 10,270,552 (Count II). In its Disclosure of Asserted Claims, Plaintiff asserted infringement of 18 claims from the '832 patent and 14 claims from the '552 patent.

Claim 1 of the '832 Patent is representative of the system claims at issues:

1. A system of gathering, processing, and distributing information of a golf tournament over a wireless network, comprising:

a first portable device configured to be carried by a broadcast or other authorized spotter of the golf tournament, the spotter having special permitted access to a golf course of the golf tournament and to participants of the golf tournament, the first portable device including a map of the golf course, ***the first portable device being configured to receive input data from the spotter regarding status of a selected player's golf ball*** during the golf tournament in real time after the golf ball has been hit by the selected player on a current hole of the selected player, the first portable device being configured to present information regarding the *location* and distance of the selected player's ball relative to the map of the golf course in real time after

3

the ball has been hit by the selected player, *the input data including information pertaining to the lie and the <u>condition of the golf ball</u> being tracked by the spotter* and the selected player's strokes as they occur, the first portable device being configured to transmit the input data over the wireless network in real time during the golf tournament;

*a second portable device carried by a patron of the sporting event* to receive transmitted input data over the wireless network, and to selectively display current statistics pertaining to the selected hole and graphical representations of the transmitted input data *according to an input from the patron*, the second portable device comprising a memory with pre-programmed information stored therein, the pre-programmed information including endorsements of respective participants of the golf tournament by manufacturers of equipment used by the respective participants of the golf tournament; and

a production module configured to receive transmitted input data over the wireless network simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display transmitted input data such that the production module selectively distributes a portion of the transmitted input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network, the processing module configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to distribute requested data to each second portable device over the wireless network *based on received data requests from each second portable device*, respectively.

'832 Patent at claim 1 (emphases added). Similarly, Claim 5 of the '832 Patent is representative of the method claims at issues:

5. A method of gathering, processing, and distributing information of a golf tournament over a wireless network, the method comprising:

providing a first portable device to be carried by a broadcast or other authorized spotter of the golf tournament, the first portable device including a map of the golf course, the spotter having special permitted access to a golf course of the golf tournament and to participants of the golf tournament;

*inputting data by the spotter to the first portable device* regarding status of a player's golf ball during the golf tournament in real time after the golf ball has been hit by the player on a current hole of the player, the first portable device being configured to present information regarding the *location* and distance of the player's ball relative to the map of the golf course in real time after the ball has been hit by the player, *the input data including information pertaining to the lie and the <u>condition of the golf ball</u> being tracked by the spotter* and the player's strokes as they occur;

4

> ***transmitting input data over the wireless network to a second portable device carried by a patron of the golf tournament*** in real time during the golf tournament, the second portable device comprising a memory with pre-programmed information stored therein, the pre-programmed information including endorsements of respective participants of the golf tournament by manufacturers of equipment used by the respective participants of the golf tournament;
>
> transmitting input data over the wireless network to a production module simultaneously from a plurality of spotters covering various players of the golf tournament, the production module being configured to display transmitted input data such that the production module selectively distributes a portion of the transmitted input data to an external television network based on characteristics of displayed input data, the production module having a processing module connected between the production module and the wireless network, the processing module configured to receive data requests over the wireless network simultaneously from a plurality of second portable devices and to ***distribute requested data to each second portable device over the wireless network based on received data requests from each second portable device***, respectively; and
>
> ***selectively displaying graphical representations of the transmitted data on the second portable device according to inquiries of the patron***.

'832 Patent at claim 5 (emphasis added).

On December 7, 2020, this Court held a hearing on claim construction. Relevant to this motion, the Court rejected Plaintiff's proposed construction of "condition of the ball" as meaning "location or physical state," and construed it to mean "physical state of the ball." The Court also construed "lie" to mean "the physical environment immediately adjacent to the golf ball in its current position." *See* ECF No. 36 (*Markman* Hr'g Tr.).

Defendant moved for summary judgment on several grounds, including non-infringement in light of Plaintiff's inability to overcome divided infringement and in light of the lack of any evidence that PGA TOUR's accused system includes the input of the condition of the ball. At the Pre-Trial Conference held on May 13, 2022, approximately two and a half weeks prior to the scheduled start of trial, this Court heard arguments from both parties on the issue of divided infringement. The Court then indicated from the bench that it was granting summary judgment of noninfringement to Defendant. After supplementary briefing in connection with divided

5

infringement and method claims, on August 2, 2023, the Court confirmed in its Memorandum and Opinion that summary judgment of noninfringement was granted to Defendant PGA TOUR on all claims. At the pre-trial conference and in its ruling, the Court did not reach the alternate grounds for summary judgment of noninfringement briefed by PGA TOUR regarding the absence of evidence that PGA TOUR's accused system included the input of the "condition of the ball."

Final Judgment was entered on August 3, 2023.

### B. Legal Standard

"The Court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), Courts are to consider the "totality of the circumstances" in determining whether a case is "exceptional." As part of this inquiry, Courts examine ***the substantive strength*** of a party's litigating position (considering both the governing law and the facts of the case) and ***the manner*** in which the case was litigated. *Id.* Courts further consider additional relevant factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (internal quotation marks omitted).

A prevailing party need only to establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id.* at 557.

### C. Reasonableness of Attorneys' Fees

Federal Circuit case law applies to the analysis of attorneys' fees under 35 U.S.C. § 285 because it is unique to patent law. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (citing *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366 (Fed. Cir. 2007)). The Federal Circuit has found that the "lodestar method" is a usual method used by District

Courts in calculating an attorney fee award. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). Under this method, attorneys' fees are calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate", taking into account the prevailing market rates and the attorneys' comparable skill, experience, and reputation. *Large Audience Display Sys., LLC v. Tennman Productions, LLC*, 660 Fed. Appx. 966, 972 (Fed. Cir. 2016) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). It is the prevailing party seeking reimbursement of attorney fees that bears the burden of establishing the number of hours expended through the presentation of adequately recorded billing records. *La. Power & Light Co. v. KellStrom*, 50 F.3d 319, 324 (5th Cir. 1995). *See also Bode v. U.S.*, 919 F.2d 1044 (5th Cir. 1990) ("[T]he party seeking reimbursement of attorneys' fees ... has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement.")

Once attorney's fees are calculated under the lodestar method, courts may adjust the amount based upon the assessment of the twelve *Johnson* factors:

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

*Id*. at 328 n.19 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). In the Fifth Circuit, "the most critical factor in determining whether the lodestar amount should be adjusted is the degree of success obtained." *Richards v. AT&T Services, Inc.*, SA-20-CV-00685-JKP, 2022 WL 2307472 at *2 (W.D. Tex. June 27, 2022) (citing *Saizan v. Delta Concrete Products Co., Inc*., 448 F.3d 795, 799 (5th Cir. 2006)).

### III.   ARGUMENT

#### A.  PGA TOUR is the Prevailing Party

Defendant PGA TOUR is plainly the "prevailing party" in the litigation. The Court granted summary judgment to PGA TOUR, holding that "Plaintiff shall take nothing by this action." ECF No. 126. As explained below, the exceptional nature of this case allows the Court to award reasonable attorneys' fees to Defendant under 35 U.S.C. § 285.

#### B.  Information Images' Infringement Positions Were Objectively Unreasonable

##### 1.  Plaintiff Had No Viable Infringement Claim Because The Asserted Patent Claims Plainly Required Actions by Third Parties And Plaintiff Had No Basis To Assert That PGA TOUR Was Responsible For Their Actions

Because Plaintiff's infringement claims had numerous fatal defects, PGA TOUR moved for summary judgment on several grounds. The Court did not reach all of the grounds presented, but found that Plaintiff's infringement claims must fail because of divided infringement.

More particularly, all of the asserted patent claims required "second portable devices," such as a cellphone or laptop, operated by third-party "patrons" or "users." Despite this blatant divided infringement issue, Plaintiff maintained its infringement claims without any reasonable basis to assert under applicable law that the patrons' actions were attributable to PGA TOUR.

For example, the asserted independent system claims (claim 1 of the '832 Patent and claim 1 of the '552 patent) explicitly required "an input from the patron" on a "second portable device" to put the system into service. *See* '832 patent at 15:43–48; '552 patent at 15:43–48 (materially identical element). Similarly, the asserted method claims (claim 5 of the '832 Patent and claim 13 of the '552 patent) required action by the patron on its portable device to initiate the step of "selectively displaying graphical representations of the transmitted data on the second portable device *according to inquiries of the patron*." *See* '832 patent at 16:15–64 (emphasis added); '552

patent at 16:49–17:29 (materially identical element).  Thus, all the asserted claims required actions undertaken not just by PGA TOUR, but also of third parties, creating divided infringement.  *See* ECF No. 125 at 8-10.

Furthermore, Plaintiff must have known that as applied to the accused system, the second portable device was owned and operated by parties other than PGA TOUR.  Plaintiff's own expert on infringement relied on the use of his own cellphone in connection with the claim elements pertaining to the "second portable device."  *See* ECF No. 125 at 23; Ex. 3 to ECF No. 75 (Valerdi Infringement Report) at 50-52.  Indeed, plaintiff's infringement expert even referenced the law on divided infringement in his report:

> 53.   **I have been informed that in the case of direct infringement of a system claim, a party can be found to use a patented system even if the party does not exercise physical or direct control over every element of the system.** For elements that are not subject to the physical or direct control of the party, I have been informed that the party is still deemed to be using that component or part of the patented system when **(1) it puts the component into service, i.e., causes it to work for its intended purpose and (2) receives the benefit of that purpose**….
>
> 54.   **I have been informed that in the case of direct infringement of a method claim, the accused infringer must perform all of the steps of the claimed method by itself or through a third party whose acts are attributable to the accused infringer.** I have been further informed that the third party's performance of method steps is attributable to the accused infringer in two types of circumstances: when the accused infringer directs or controls the third parties' performance, or when the accused infringer and the third parties form a joint enterprise. I also understand that a third party is acting under the accused infringer's direction or control (1) if the third party is the agent of the accused infringer, or **(2) if the accused infringer provides instructions or directions to the third-party**, or (3) if the accused infringer contracts out to the third-party to perform the steps at issue. **I have also been informed that directing or controlling others' performance of certain method step(s) includes circumstances in which an actor (1) conditions participation in an activity or receipt of a benefit upon others' performance of one or more steps of a patented method, and (2) establishes the manner or timing of that performance.**

9

72293419;7

*See* ECF No. 75, Ex. 3 (Valerdi Infringement Report) ¶¶ 53-54.  Yet, plaintiff's expert report contains no analysis regarding how PGA TOUR supposedly exercised control over a patron's use of their own portable device, or what activity or benefit PGA TOUR supposedly conditioned upon performance of the claimed method steps.  *See id.*  Regardless, Plaintiff unreasonably continued to litigate its infringement claims.

After Defendant moved for summary judgment on, among other things, divided infringement, Plaintiff continued to litigate unreasonably by making arguments that were unsupported by evidence or the law. With respect to the system claims, Plaintiff argued that it was enough that PGA TOUR supplied software for golf fans to run on their portable devices.  *See* ECF No. 83 at 12 ("PGA establishes the manner of the use of the 'second portable device' in that it provides the PGA TOUR App and TOURCast digital platforms on the 'second portable device'"). However, the seminal case on divided infringement for system claims, *Centillion Data Sys. LLC v. Qwest Communications Int'l Inc.*, directly holds that "[s]upplying the software for the customer to use is not the same as using the system." 631 F.3d 1279, 1286 (Fed. Cir. 2011); *see also Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1078 (Fed. Cir. 2021) (rejecting patent owner's argument that although the video game manufacturer defendant did not make the hardware that customers used to play the accused video games, there was direct infringement because the defendant's accused software caused the processors in the customer's consoles to act in a way that satisfies the elements of the asserted claim; holding "The customer, not [the software-supplying defendant], completes the system by providing the [hardware component] and installing the client software.").

Similarly, with respect to the method claims, Plaintiff argued that PGA TOUR controlled the manner and timing of the patrons' use of their portable devices via an End-User License

Agreement.  However, as PGA TOUR replied and the Court found, Plaintiff's argument was wholly unsupported by the actual text of the agreement.  Plaintiff could not point to anything in the agreement that established the manner and timing of the user's performance of the steps at issue, and nothing in it requires or instructs users to perform any of the actions required by the patents claims, or told them how or when to do so.  *See* ECF No. 125 at 15.

Likewise, with respect to whether PGA TOUR offered patrons/users a benefit or access to an activity that was conditioned on performing the claimed steps, during supplemental briefing, Plaintiff changed its position regarding what is the relevant activity to merely parrot the language of the method claims.  *See* ECF No. 125 at 14-15.  Moreover, the undisputed evidence established that "[t]here are numerous ways for the public to participate in the relevant activity and receive the relevant benefit without having to perform the claimed method steps."  *See* ECF No. 125 at 17-18.

When faced with a fatal divided infringement problem without the evidence needed to meet any exception to divided infringement, a reasonable litigation should withdraw its claim.  Here, even after PGA TOUR filed its summary judgment motion, Plaintiff instead chose to maintain its claims and continue to plunge forward towards trial, forcing PGA TOUR to incur the significant expense of preparing the pretrial order and related materials such as jury instructions, deposition designations, and exhibit lists; briefing motions in limine; preparing witness examinations; and otherwise preparing for trial.  By maintaining its nonmeritorious infringement claims through arguments that were unsupported by evidence, Plaintiff's unreasonable claims and conduct greatly increased PGA TOUR's cost of defense in contravention of Rule 1 of the Federal Rules of Civil Procedure (the rules should be employed by "the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")  Because Plaintiff continued to maintain its unsupportable infringement claims, this case is exceptional.

11

### 2. Plaintiff Had No Viable Claim Because PGA TOUR's System Has Never Included The Collection Of Data About The "Condition Of The Ball"

Separately, early in the case, Defendant PGA TOUR warned Plaintiff that there could be no infringement here because the independent patent claims require the input of the "condition of the golf ball," but "the condition of the ball is not input in the Accused Product."  Ex. 1 at 2. Plaintiff's improper solution to this hole in its prima facie case was to argue that the "location" and "lie" of the ball counted as the "condition" of the ball.  ECF No. 83 at 13; Ex. 3 to ECF No. 75 (Valerdi Infringement Report) at 44-46.  Plaintiff's arguments were unreasonable because they were contrary to the Court's claim construction and to the disclosure in the patents' specification.

During the *Markman* hearing, the Court rejected Plaintiff's proposed construction that "condition of the ball" means "***location or*** physical state." *See* ECF No. 36 (*Markman* Hr'g Tr.) at 41:24-42:8, 44:16-19.  Instead, the Court construed "condition of the ball" to mean "physical state of the ball." The Court's construction is consistent with the patent specification, which itemizes "condition of the ball" ***in addition to and separately from*** location and from lie of the ball, making clear that they are separate attributes:

> The information is obtained from personnel (spotters) who have special permitted access to the course and players in order to track the location and distance of a player's balls, including special knowledge regarding status of the event, for example, club selection, ***lie of the ball***, ***condition of ball***, ***distance*** from markers, length of putt, order of play, scores, etc., thus enabling the spotters to input information using the spotter's portable device to the network for transmission to the patron portable devices ….
>
> …
> For example, the spotter can input information about the ***location***, ***condition***, and '***lie***' of a particular player's ball, the order of play …
>
> …
> In some embodiments, the circuitry of the portable device used by the spotter is programmed to record and transmit various characteristics, such as but not limited to golfers appearance, golfers equipment, ***golfers ball general location, golfers ball***

12

> ***GPS location, golfers ball condition,*** golfers strokes as they occur, golfers penalty strokes, the club which Golfers are to use, and time periods of golfers next action.

ECF No. 74, Ex. 1 at 6:31-40; 7:51-53, 8:7-14; *see also id.* at Fig. 11 (displaying data on whether the ball is clean or dirty in addition to the ball's location and other data).

Again confirming that they are different things, the independent claims also separately reference location, lie, and condition of the ball. *See*, *e.g.*, ECF No. 74, Ex. 1 ('832 patent) at 15:33-34 ("the location and distance of the selected player's ball"), 15:37-38 ("the lie and the condition of the golf ball").

Indeed, the Court construed the "condition of the ball" to mean the "physical state of the ball," and the Court construed "lie" to mean "the physical environment immediately adjacent to the golf ball in its current position." Certainly after the Court's ruling at the *Markman* hearing, it would be unreasonable to argue that input of the lie of the ball meets the claim requirement of input of the condition of the ball.

Nevertheless, Plaintiff unreasonably maintained its infringement claims by arguing, contrary to the Court's constructions and contrary to the disclosures in the patent, that the location and lie of the ball met the "condition of the ball" claim requirements. Indeed, Plaintiff's infringement expert could only point to information about the location of the ball, and the alleged inclusion of information about the lie of the ball, as satisfying the requirement for information about the condition of the ball. *See* Ex. 3 to ECF No. 75 (Valerdi Infringement Report) at 45-46, 81, 192-193. Furthermore, Plaintiff's expert's entire argument that the claim limitation for "condition of the ball" was met by the location and/or lie of the ball relied upon a third-party's

13

hearsay evidence that "condition of the ball" included lie and location, once again directly contradicting the Court's construction.[1]

Continuing to argue that the "condition of the ball" claim element was met by data regarding the location and lie of the ball after the Court rejected Plaintiff's proposed construction of "location or physical state" and after the Court construed "condition of the ball" and "lie" to mean very different things was unreasonable and makes this case exceptional.

### C.  Information Images' Damages Claim Was Objectively Unreasonable

Plaintiff's unreasonable conduct in this litigation was further compounded by the frivolousness of Plaintiff's claim for damages.

As set out in Plaintiff's Expert Report of Justin R. Blok (the "Blok Damages Report"), the alleged damages for Plaintiff's claims for patent infringement were separated into two categories: (1) a "Running Royalty Component" based upon use by the public of PGA TOUR's various accused digital platforms; and (2) a "Lump Sum Royalty" based upon revenues PGA TOUR received under an agreement with IMG (the "IMG Agreement"). Ex. 5 to ECF No. 75 (Blok Damages Report) ¶¶ 8-9; Ex. 6 to ECF No. 75 (Blok Dep. Tr.) at 55:1-21.

Significantly, the royalty damages that Plaintiff sought in connection with the IMG agreement accounted for over **75%** of the damages that sought by Plaintiff in the case. *See id.* However, Plaintiff's claim for damages relating to the IMG Agreement was frivolous because Plaintiff had no evidence of any infringement in connection with that agreement.

In particular, all of the asserted patent claims require a "second portable device" used by a patron/user. *See* ECF No. 74, Ex. 1 ('832 patent) at claims 1 and 5; Ex. 2 to ECF No. 74 ('552

---

[1] During the Pre-trial Conference of May 13, 2022, the Court granted Defendant's *Daubert* motion to exclude any reliance on testimony or opinions given to Plaintiff's expert by the third-party.

patent) at claims 1 and 13. However, the services that PGA TOUR provided to IMG under the IMG Agreement did not involve any such second portable device. Indeed, Plaintiff's infringement expert admitted during his deposition that he was unaware of any evidence of a "second portable device" in connection with the IMG Agreement:

> Q. Okay. And in connection with this agreement, PGA TOUR supplies IMG Arena with data that's collected from the ShotLink system, correct?
>
> A. That's my understanding.
>
> Q. Okay. **The collection of data performed by the ShotLink system does not involve a second portable device, correct**?
> MR. BARR: Object to form.
> THE WITNESS: **Yeah, I could agree with that**.
>
> …
>
> Q. Okay. Well, maybe you don't have an opinion on this. Maybe -- because I don't know that it's in your report. So let me just ask you, **do you have an opinion as to whether or not there is use of a second portable device in conjunction with PGA TOUR's obligations and fulfilling its obligation to IMG Arena**?
>
> A. **I didn't opine on that or include anything of that nature in my report, so I do not have an opinion**.
>
> …
>
> Q. **Is there any evidence that you're aware of that anyone in connection with IMG Arena accesses ShotLink data over a second portable device that meets all the requirements of the claims**?
>
> MR. BARR: Object to form.
>
> THE WITNESS: **Not that I am aware of**.

ECF No. 75, Ex. 4 (Valerdi Dep.) at 143:10-18, 146:11-20, 147:4-19; 206:2-7 (emphases added).

Thus, Plaintiff's own infringement expert was unable to provide any basis for a reasonable belief that Plaintiff was owed a reasonable royalty on the revenues received by PGA TOUR under the IMG Agreement.

In its Response to Defendant's Motion for Summary Judgment [ECF No. 83], Plaintiff made two arguments for why it was entitled to damages in connection with the IMG Agreement: first, that there was an alleged nexus between the IMG Agreement and information provided to users running PGA TOUR's mobile app on their smartphones; and second, that damages under the IMG Agreement were recoverable as sales of an unpatented product made by a patented device. Both of these arguments were unsupported and therefore unreasonable.

In connection with Plaintiff's first argument, Plaintiff pointed to betting odds that appear in PGA TOUR's app, arguing that those odds were generated by betting operators "based on the ShotLink Data the Betting Operators receive from IMG." ECF No. 83 at 8. Critically, however, **this was pure speculative *ipsie dixit*.** Even though it was facing summary judgment, Plaintiff cited to **_no_** evidence supporting its argument, because it had no supporting evidence.

Indeed, as explained in the Declaration of Scott Warfield in Support of Defendant PGA TOUR's Motion for Summary Judgment, Plaintiff's speculation was patently false. The betting operators that supply PGA TOUR with the odds that appear in PGA TOUR's app do not generate those odds using ShotLink data received from IMG Arena. *See* ECF No. 90-1, Warfield Dec.[2] ¶¶ 5-7. Plaintiff acted unreasonably in opposing summary judgment with speculative assertions lacking any evidentiary support.

Plaintiff's second argument was similarly unsupported. In fact, the caselaw that Plaintiff cited in support of its argument that it was entitled to royalties on revenues under the IMG Agreement in fact supported PGA TOUR. Sales of a noninfringing product can be subject to a reasonable royalty *only if the product is made by a patented/infringing device*. *See WesternGeco*

---

[2] The Declaration of Scott Warfield is not designated with an exhibit number, but may be found on page 16 of the overall document filed as ECF No. 19.

16

72293419;7

*L.L.C. v. Ion Geophysical Corp.*, 791 F.3d 1340, 1357 (Fed. Cir. 2015) ("***[W]here a patented device is used*** to manufacture unpatented products that are later sold, the non-infringing sales can be used to calculate lost profits or reasonable royalties.") (emphasis added). As explained above, Plaintiff and its expert had no evidence that there was any "second portable device" used in connection with the IMG agreement. The IMG agreement involved only the collection and transmission of data to IMG, not the use of a second portable device by patrons/users to request or view the data. Because there was no evidence of a patented system or method being used in connection with the services provide to IMG, Plaintiff had no legal basis for seeking infringement damages on the resulting revenues.

Thus, although Plaintiff had two years from the filing of its Complaint to try to find evidence supporting a viable theory of damages relating to the IMG Agreement under the law, it instead chose to grossly inflate its damages claim – indeed, quadrupling it – by including a royalty on the IMG Agreement revenues that was unsupported by any evidentiary or caselaw support. The unreasonable pursuit of damages without any basis reinforces the exceptional nature of this case. *See AdjustaCam, LLC v. Newegg, Inc*., 861 F.3d 1353, 1362 (Fed. Cir. 2017) ("[W]e conclude that the district court clearly erred by failing to consider [plaintiff's] damages methodology as part of a totality-of-the-circumstances analysis. The irregularities in [plaintiff's] damages model… should have played a role in the evaluation of whether this is case exceptional.")

### D.  No Adjustment Of Fees

Defendant was forced by Plaintiff to litigate this case for over 2.5 years. Defendant is not seeking an upward adjustment of its attorneys' fees calculated under the lodestar method. Instead, Defendant request that the Court award Defendant's attorneys' fees of $2,487,097.40. *See* Ex. 2 and its attachment (summary of fees). This amount reflects 4,207 hours billed over approximately

2.5 years by 7 timekeepers. *Id.* The amount disclosed accurately reflects the hours that were actually expended on the categories of work set forth in Ex. 2.

The hours expended and the rates claimed are reasonable for defending claims of patent infringement in a case involving 32 claims asserted from two patents, defenses of non-infringement and invalidity, and two theories of damages resulting in a damages claim of over $40 million. The partner attorney rates charged ranging between $425 and $840 and associate attorney rates charged ranging between $335 and $405 are reasonable for the complex patent litigation presented here. *See* Ex. 2.

## IV.   PRE-FILING CONFERENCE

Pursuant to Local Rule CV-54(b)(2), counsel for the parties met and conferred on August 16, 2023. Defendant certifies that no agreement could be reached because Plaintiff does not agree that this case is exceptional under 35 U.S.C. § 285 and believes that no fees should be awarded.

## V.   CONCLUSION

For at least the foregoing reasons, Defendant PGA TOUR respectfully requests that the Court grant its motion and award attorneys' fees in the amount of $2,487,097.40.

Date: August 17, 2023

                                    Respectfully submitted,

                                    AKERMAN LLP
                                    777 South Flagler Drive,
                                    Suite 1100 West Tower
                                    West Palm Beach, Florida 33401
                                    Telephone: (561) 653-5000
                                    Fax: (561) 659-6313

                        By:  */s/ David Brafman*
                                    David Brafman (Admitted *pro hac vice*)
                                    david.brafman@akerman.com
                                    Mark Passler (Admitted *pro hac vice*)
                                    mark.passler@akerman.com

                                    C. Bryce Benson
                                    Texas Bar No. 24031736
                                    bryce.benson@akerman.com
                                    AKERMAN LLP
                                    2001 Ross Avenue, Suite 3600
                                    Dallas, Texas 75201
                                    Telephone: (214) 720-4300
                                    Fax: (214) 981-9339

                                    *Attorneys for Defendant PGA TOUR, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023, I filed the foregoing document via the Court's CM/ECF system, which will simultaneously deliver Notices of Electronic filing to the following:

John H. Barr, Jr.
**Meade Neese & Barr LLP**
2118 Smith Street
Houston, Texas 77002
jbarr@mnbllp.com
cboden@mnbllp.com
ksills@mnbllp.com

John A. Yates
B. Todd Patterson
Edgar N. Gonzalez
**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
jyates@pattersonsheridan.com
tpatterson@pattersonsheridan.com
kcoleman@pattersosheridan.com
jcameron@pattersonsheridan.com
kmowery@pattersonsheridan.com
egonzalez@pattersonsheridan.com

Abelino Reyna
**Patterson + Sheridan LLP**
900 Washington Ave., Suite 503
Waco, Texas 76701
areyna@pattersonsheridan.com
kcoleman@pattersonsheridan.com
rakins@pattersonsheridan.com

*Attorneys for Plaintiff Information Images, LLC*

                By: _/s/David Brafman_
                    David Brafman